STATE of Rhode Island ex rel. TOWN OF MIDDLETOWN

v.

**John D. ANTHONY.**

No. 96–636–MP.

Supreme Court of Rhode Island.

May 28, 1998.

Francis S. Holbrook, II, Newport, for Plaintiff.

Kenneth R. Tremblay, Portsmouth, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition for certiorari of the State of Rhode Island ex rel. Town of Middletown (petitioner or town) after the District Court found the respondent, John D. Anthony, not guilty of the charge of driving under the influence of alcohol in violation of G.L.1956 § 31–27–2. We deny certiorari on double jeopardy grounds. It is our opinion, however, that the trial justice erred in excluding

breathalyzer test results after having found that the respondent had not been advised that an out-of-state conviction of driving under the influence of alcohol or drugs could be used to enhance the penalty for a subsequent Rhode Island conviction for the same offense. The relevant facts of this case follow.

### Facts and Procedural History

On November 4, 1996, Sergeant Joseph M. O'Toole (O'Toole) of the Middletown police department was dispatched to the scene of an automobile collision. The respondent was the driver of one of the two cars involved in the collision. After observing that respondent exhibited signs and indicia of alcohol intoxication, O'Toole administered a series of field sobriety tests to respondent, who performed the tests in an unsatisfactory manner and was placed under arrest for suspicion of driving under the influence of alcohol.

The respondent was transported to the Middletown police department, where the Rights for Use at Station form (rights form) was read to him.[1] The rights form advised respondent that he was suspected of having driven under the influence of alcohol and was being requested to submit to chemical testing to determine his blood alcohol concentration (BAC). The rights form further detailed his rights in respect thereto and cited the statutory penalties for refusal to submit to chemical testing as provided by § 31–27–2.1(a)(1–5). In relevant part, the rights form stated:

"You do not have to submit to a chemical test at my request. If you refuse, none shall be given. However, a report will then be sent to an Administrative Law Judge of the Administrative Adjudication Court and, upon receipt and review by a judge, your Rhode Island driver's license or privilege to operate a motor vehicle in Rhode Island for non Rhode Island licensees, will be immediately suspended. Af-

ter hearing, the following mandatory sanctions will be imposed if the charge is sustained.

(1) For a first violation *within Rhode Island*, driver's license or privilege to operate suspension for three (3) to six (6) months; fine of $200 to $500; public community service of ten (10) to sixty (60) hours; and a course on driving while intoxicated and/or alcohol or drug treatment.

(2) For a second violation *within Rhode Island* within five years, license or privilege to operate suspension for one (1) year to two (2) years; fine of $300 to $500; and alcohol and/or drug treatment.

(3) For a third or subsequent violation *within Rhode Island* within five years, license or privilege to operate suspension for two (2) to three (3) years; fine of $400 to $500; and alcohol or drug treatment. Prior to the reinstatement of a license to a person charged with a third [or] subsequent violation within a three year period, a hearing shall be held before an Administrative Judge.

(4) In addition to the above penalties, all violators shall pay a highway assessment fee of $500 and an additional fee of $173. *For determination of the period of license suspension, a prior violation shall also consist of any conviction of driving while under the influence of liquor and/or drugs, within a five (5) year period in the State of Rhode Island.*" (Emphases added.)

The respondent indicated his consent to chemical testing by signing the appropriate section of the rights form. Two breathalyzer tests were then administered to respondent thirty minutes apart; the results of both tests indicated a BAC above 0.1 percent, and respondent was charged with driving under the influence of alcohol or drugs in violation of § 31–27–2.[2]

---

1. The Rights for Use at Station form, distributed to all local police departments, was originally "designed through a combined effort of the Department of Health, the Department of Transportation (DOT), and the Attorney General's office." *Levesque v. Rhode Island Department of Transportation*, 626 A.2d 1286, 1288 (R.I.1993).

2. General Laws 1956 § 31–27–2 provides in pertinent part:

"**Driving under influence of liquor or drugs.**—(a) Whoever operates or otherwise drives any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination thereof, shall be guilty of a misdemeanor * * *.

(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concen-

After respondent waived his right to transfer his case to the Superior Court for a jury trial, a bench trial was held in the District Court, Second Division. On December 13, 1996, the day scheduled for trial, a conference was held with the trial justice on the admissibility of the breathalyzer test results. The respondent maintained that the results were inadmissible because the rights form had not advised him of a then-recently enacted Public Law that had amended § 31–27–2 to provide that an out-of-state conviction for driving under the influence could be considered a prior offense for purposes of imposing penalties in a Rhode Island court on a similar charge. See P.L.1996, ch. 263, § 1, post. The respondent argued that because of this omission, he had not been fully apprised of the consequences of refusing to submit to chemical testing. The town, on the other hand, argued that the rights form was legally satisfactory and requested a continuance in order to prepare a memorandum in response to respondent's claim. That continuance was denied, as was the town's request that the trial justice certify to this Court the question of the validity of the rights form.

At trial, the trial justice admitted into evidence O'Toole's certification as a breathalyzer operator, the certification for the breathalyzer actually used by O'Toole on the date in question, and regulations on the use of breathalyzers from the State Department of Health in accordance with §§ 31–27–2(c)(4) and 31–27–2(c)(5). The trial justice, however, refused petitioner's request to admit into evidence either the breathalyzer test results or proof that the results were mailed to respondent as required by § 31–27–2(c)(2). The trial justice apparently concluded that respondent had not validly consented to submit to the breathalyzer tests because the rights form did not state that an out-of-state conviction for driving under the influence could enhance his punishment if he was convicted of the present charge.

On December 18, 1996, the town filed a petition for issuance of a writ of certiorari and an application for stay of the District Court proceedings pending disposition of the petition. The motion to stay was denied on December 19, 1996. On January 3, 1997, the trial justice rendered a not guilty verdict. The petition for issuance of the writ was granted on January 31, 1997, pursuant to G.L.1956 § 8–8–32.

## Standard of Review

It is clearly established that the admissibility of evidence lies within the sound discretion of the trial justice whose decision will not be disturbed on review "unless a clear abuse of that discretion is apparent." *Soares v. Nationwide Mutual Fire Insurance Co.*, 692 A.2d 701, 702 (R.I.1997) (Mem.) (citing *Cuddy v. Schiavonne*, 568 A.2d 1387, 1389 (R.I.1990)); *see also State v. Martini*, 460 A.2d 936, 938 (R.I.1983). Moreover, the task of this Court is "to establish and effectuate statutory intent" when interpreting legislative enactments. *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 290 (R.I.1993). In so doing, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996).

With these principles in mind, we turn to the case before us.

## Discussion

Central to this case is P.L.1996, ch. 263, enacted three months prior to respondent's arrest, which amended §§ 31–27–2(d)(2), 31–27–2(d)(3)(i), and 31–27–2(d)(3)(ii). Under the amendments, an out-of-state conviction for driving under the influence of liquor or drugs constitutes a prior offense for purposes of imposing penalties, including imprisonment, following a second or subsequent conviction under § 31–27–2. Specifically, for purposes of determining whether a Rhode Island conviction was a second or a subsequent offense, the 1996 amendment provided that a prior offense would include a prior violation and conviction within a five-year

---

tration is one-tenth of one percent (.1%) or more by weight as shown by a chemical analysis of a blood, breath, or urine sample shall be

guilty of violating subsection (a) of this section."

period "regardless of whether the prior violation and subsequent conviction was a violation and subsequent conviction under this statute or under the driving under the influence of liquor or drugs statute of any other state." P.L.1996, ch. 263, § 1.

The parties do not dispute that the amendments pertain to § 31–27–2, "Driving under influence of liquor or drugs," and that no similar amendments were made to § 31–27–2.1, "Refusal to submit to chemical test."

The town has argued that the trial justice committed reversible error in refusing to admit into evidence respondent's breathalyzer test results and proof that the results were mailed to him in accordance with § 31–27–2(c)(2). The town contended that the rights form "was valid and accurate," and that the form, which "pertains to what consequences attach if a Defendant refuses to submit to a chemical test when requested," "does not require the insertion of language relative to an out-of-state conviction for Driving Under the Influence (DUI) being considered as a prior conviction in this State." In other words, an out-of-state conviction for driving under the influence of alcohol or drugs "serves only to enhance the penalties relative to the criminal prosecution of a Driving Under the Influence (DUI) charge [and] does not apply in the refusal context."

At trial, respondent argued successfully that "without the out-of-state conviction advisement, as to how it affected the refusal to take a chemical test, the consent of [respondent] to take the test was not validly obtained." Because § 31–27–2(c)(1) "requires actual consent as a pre-condition to the admissibility of [chemical] test results," respondent maintained, the results were inadmissible. Before this Court, however, respondent's single contention was that the not guilty verdict "has rendered the issue presented as moot [because respondent] no longer has an ongoing stake in the controversy."

■ We first address respondent's mootness claim. The respondent correctly cites our decision in *Seibert v. Clark,* 619 A.2d 1108, 1110 (R.I.1993), for the proposition that "[a] case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." Notwithstanding our conclusion that the trial justice clearly erred in denying the admission of the breathalyzer test results, it is well settled that an individual "may not be retried on the same charge following acquittal on that charge." *State v. Grabowski,* 644 A.2d 1282, 1284 (R.I.1994). The well-established prohibitions against double jeopardy contained in the Fifth Amendment to the United States Constitution and the Rhode Island Constitution, *State v. One 1990 Chevrolet Corvette VIN: 1G1YY3388L5111488,* 695 A.2d 502, 505 (R.I.1997), preclude us from granting the town's petition, and respondent, having been found not guilty, no longer has a stake in the outcome of this case.

■ In spite of the mootness of this case as it affects respondent, it is, nevertheless, our opinion that the trial justice was clearly wrong in refusing to admit the breathalyzer test results into evidence at trial. In accordance with this Court's "general, plenary supervisory power over all courts of inferior jurisdiction, statutorily granted in § 8–1–2," [3] *In the Matter of Almeida,* 611 A.2d 1375, 1381 (R.I.1992), we are of the opinion that the issue presented by this case is capable of repetition, but may evade review. Accordingly, we proceed to address the erroneous holding of the trial justice. *Morris v. D'Amario,* 416 A.2d 137, 139 (R.I.1980); *see also In re Amanda M.,* 626 A.2d 1277, 1278 (R.I.1993).

Section 31–27–2(c) "controls the admissibility into evidence of the results of a breathalyzer test in a criminal prosecution for driving under the influence." *In re Kean,* 520 A.2d 1271, 1273 (R.I.1987). Section 31–27–2(c) provides in relevant part:

"In any criminal prosecution for a violation of [driving under the influence of alcohol], evidence as to the amount of intoxi-

---

**3.** General Laws 1956 § 8–1–2 provides in relevant part that this Court "shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided."

cating liquor * * * in the defendant's blood at the time alleged as shown by a chemical analysis of the defendant's breath * * * shall be admissible and competent, provided that evidence is presented that the following conditions have been complied with:

"(1) The defendant has consented to the taking of the test upon which the analysis is made."

As we have observed in the past, the language of 31–27–2.1 "is clear and unambiguous and should therefore be applied literally." *Link v. State*, 633 A.2d 1345, 1348 (R.I. 1993).

■ This Court has held that "the administration of [a breathalyzer] examination constitute[s] a search within the meaning of the [F]ourth [A]mendment," *State v. Berker*, 120 R.I. 849, 856, 391 A.2d 107, 111 (1978), and that "consent within the meaning of § [31–37–2(c)(1) ] must be actual and may not be implied."[4] *Id.* at 858, 391 A.2d at 112. Moreover, the state "has the burden of demonstrating that the consent was 'freely and knowingly given.' " *Id.* (quoting *State v. Leavitt*, 103 R.I. 273, 289, 237 A.2d 309, 318 (1968)).

■ *Berker* unequivocally established that the admissibility of breathalyzer test results at the trial of a defendant alleged to have violated § 31–27–2 is contingent upon the presentation of evidence establishing that the defendant actually, not merely impliedly, consented to the administration of the test. The question in the case before us is whether such consent was valid if the person giving the consent had not been informed of the provisions of P.L.1996, ch. 263, § 1, a penalty enhancement amendment to § 31–27–2.[5] It is our conclusion that such consent *is* valid, and that the breathalyzer test results obtained in the instant case were admissible.

This Court has identified the information that must be disclosed to an individual before consent to a BAC test is deemed valid. In *State v. Locke*, 418 A.2d 843 (R.I.1980), a defendant convicted of driving under the influence of alcohol in violation of § 31–27–2 challenged the admission at trial of breathalyzer test results, arguing that "[t]he threat of losing his license * * * coerced him into taking the test, thereby rendering his consent involuntary." 418 A.2d at 848. We concluded that the test results were admissible and affirmed his conviction. *Id.* at 850. We observed that *"the arresting officer must inform the person under arrest of his Miranda rights, of his right to be examined by a physician of his choice, of his right to refuse to submit to the breathalyzer examination, and of the consequences of the failure to consent to the test."* *Id.* (Emphases added.) *See also Gemma v. State ex rel. Town of West Warwick*, 655 A.2d 254 (R.I.1995) (Mem.) (denying petition for writ of certiorari to review Administrative Adjudication Court Appeals Panel's decision affirming an order that sustained a charge of refusing to submit to chemical testing after the "petitioner was adequately advised of the penalties he would incur *if he refused to submit to a breathalyzer test* "). (Emphasis added.)

■ Moreover, in order to be admissible in a trial adjudicating a charge of driving under the influence, chemical test results must be obtained after the party has been warned of penalties that, although not expressly listed within § 31–27–2.1, are incurred as a *direct result* of refusal. For example, in *Levesque v. Rhode Island Department of Transportation*, 626 A.2d 1286, 1289 (R.I.1993), we held that a suspected drunk driver must be informed "of the possible penalty of loss of his or her [driver's] registration because of his or her refusal to submit to a chemical test." In so holding, we rejected the claim of the Department of Transportation that § 31–27–2.1(a) "demonstrates a legislative intent that the police officer only be required to inform a defendant of the penalties specifically enumerated in the statute." 626 A.2d at 1289–90. Because the statute providing for the suspension of an individual driver's registration is

---

4. Section 31–27–2(c)(1) was formerly codified at § 31–27–2(b)(1). *See State v. Berker*, 120 R.I. 849, 857, 391 A.2d 107, 112 (1978).

5. At oral argument before this Court, respondent's attorney acknowledged that respondent did not have any out-of-state convictions for driving under the influence of drugs or alcohol.

"automatically triggered" by a defendant's refusal to submit to a breathalyzer test, *id.* at 1289, and because license suspension is "a necessary penalty for refusal to submit to a breathalyzer test," *id.*, we held that in order for consent to a chemical test to be valid, it must be established that the consenting individual was advised of the possibility of revocation of his or her registration. *See also Brown v. Rhode Island Department of Transportation,* 638 A.2d 1052, 1054 (R.I. 1994) (concluding same).

 Mere technical deficiencies will not render chemical test results inadmissible. For example, in *Link v. State, ante,* this Court addressed the question "whether a charge of refusal to submit to a breathalyzer test is sustainable only when the hearing judge finds that the law-enforcement report required by § 31–27–2.1(a) precisely enumerates all penalties imposed for refusal." 633 A.2d at 1348. An Administrative Adjudication Court judge had dismissed a charge brought against Link for refusal to submit to a chemical test because the law enforcement report of the incident leading to the charge incorrectly listed the criminal/juvenile justice information systems fee imposed for refusal to take a chemical test as $115, when it was actually $147. *Id.* at 1346–47. We held that the hearing judge's dismissal of the charge "prior to taking any evidence, including the state's evidence that Link had in fact been informed of the correct fee * * * constitute[d] an error of law." *Id.* at 1349. To conclude now that the validity of consent to a chemical test for the presence of drugs or alcohol under § 31–27–2.1 is contingent upon a warning about ancillary provisions in § 31–27–2 that are not triggered by a suspect's refusal to submit to such a test would expand the concept of consent beyond the well-established parameters enunciated by this Court in *Berker* and its progeny.

Sections 31–27–2 and 31–27–2.1 are distinct statutes that set forth the elements of different offenses: "Driving under the influence of liquor or drugs," and "Refusal to submit to chemical tests," respectively. *State v. Hart,* 694 A.2d 681, 682 (R.I.1997) (per curiam) ("it is clear that refusing a breathalyzer test and driving under the influ-

ence of liquor are wholly distinct and separate offenses as each requires proof of one or more elements which the other does not"); *State v. Jenkins,* 673 A.2d 1094, 1097 (R.I. 1996) (observing that §§ 31–27–2 and 31–27–2.1 are "two separate statutes, each having distinct elements"). As we have observed, "[D]riving under the influence of liquor does not include the element of refusing a breathalyzer test. Refusing a breathalyzer test does not include the element of driving under the influence of liquor." *Hart,* 694 A.2d at 682; *see also State v. DiCicco,* 707 A.2d 251, 256–57 (R.I.1998) (holding that a conviction under § 31–27–2 may be sustained "in the absence of a BAC test having been administered * * * [provided that] the totality of other competent evidence establishes beyond a reasonable doubt that a person was under the influence").

To the degree that § 31–27–2 is implicated by a suspected drunk driver's refusal to submit to chemical testing, we conclude that the current rights form adequately advises the driver. Section 31–27–2.1(a)(4) provides that "[f]or purposes of determining the period of license suspension [in the event that a person refuses to submit to chemical testing], a prior violation shall constitute any charge brought and sustained under the provisions of this section or § 31–27–2, as amended." Consistent therewith, the rights form admonishes that "[f]or determination of the period of license suspension, a prior violation shall also consist of any conviction of driving while under the influence of liquor and/or drugs, within a five (5) year period in the State of Rhode Island."

In accordance with the clear language of § 31–27–2.1(a)(4), only a charge "brought and sustained" under § 31–27–2 may be used in determining an appropriate period of license suspension for violating the refusal statute. Therefore, it is clear that an *out-of-state* conviction for driving under the influence is *not* implicated by the provision of § 31–27–2.1(a)(4). As such, the penalty enhancement provision of P.L.1996, ch. 263 is not triggered.

In conclusion, for the reasons set forth herein, the petition for certiorari is hereby denied on double jeopardy grounds, and the

writ previously issued is quashed. We affirm the decision of the District Court to which the papers in this case may be returned with our opinion endorsed thereon.

FLANDERS and GOLDBERG, JJ., not participating.

GOLDBERG, Justice, dissenting.

Although the majority's position is laudatory, I must respectfully dissent because I am of the opinion that this case simply does not present a justiciable issue for this Court to review.

Basic precepts of American jurisprudence provide that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. *See also* R.I. Const. art. 1, sec. 7. Since the respondent John D. Anthony (Anthony) has been found not guilty of the charged offense, namely, driving under the influence of alcohol, the majority correctly notes that the state is prohibited from retrying him. *See State v. Grabowski*, 644 A.2d 1282, 1284 (R.I. 1994). *See also Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I.1993) ("[a] case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy"). Nevertheless, the majority reaches the merits of this case and essentially issues an advisory opinion by declaring "that the issue presented by this case is capable of repetition, but may evade review." I respectfully disagree.

In this case the trial judge concluded that since Anthony was not informed that an out-of-state conviction for driving under the influence of alcohol could be used to enhance his Rhode Island sentence, Anthony did not validly consent to the breathalyzer tests and that, therefore, the state was prohibited from introducing the test results into evidence. The trial judge's ruling led this Court to grant certiorari and declare that this issue was capable of evading review. However, during oral arguments it was learned that in subsequent cases concerning this very same issue the same trial judge reconsidered his prior ruling and has now decided to admit a driver's breathalyzer test results into evidence despite the fact that the driver has not been informed that a previous out-of-state conviction for driving under the influence of alcohol may be used to enhance punishment. Since these test results are now being admitted into evidence without prior admonishment, this issue would have inevitably been brought to this Court's attention through its proper course and in its proper time. In those circumstances, unlike the circumstances presented by this case, both parties would have had a vested interest in briefing this issue fully and the Court would have had the benefit of hearing oral arguments from two adverse parties. The Court's decision to review a nonjusticiable issue that is not capable of evading review has had the unfortunate effect of prohibiting this issue from being thoroughly explored. Consequently I dissent.